UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

KEVIN WOOSLEY,                        )
                                      )
        Plaintiff,                    )   Civil Action No. 06-365-JMH
                                      )
v.                                    )
                                      )
CITY OF PARIS, et al.,                )   **MEMORANDUM OPINION AND ORDER**
                                      )
        Defendants.                   )
                                      )


                    **       **       **       **       **


    This matter is before the Court on Defendants' Motion for
Summary Judgment [Record No. 36].  Plaintiff has filed a Memorandum
in Opposition to the Motion for Summary Judgment [Record No. 39],
and Defendants have replied in support of their motion [Record No.
40].  This motion is now ripe for decision.

**I.    FACTUAL BACKGROUND**

    This action arises out of an incident which took place at
Plaintiff Kevin Woosley's residence on October 29, 2005.  At about
3:00 p.m., when Richard Diener arrived at Woosley's home, Diener
charged at Woosley, who was in his front yard.  Woosley wrestled
Diener to the ground, and the two men "rolled around a couple of
times" before Plaintiff subdued Diener by means of a "shoulder
lock."  Woosley, weighing 250 pounds, then "rolled over onto"
Diener, who weighed 120 pounds, using his weight to pin Diener

-1-

face-down in the grass and immobilize him.  Woosley had his arms "wrapped" around Diener's arms and neck.

The police were called and Paris Police Captain Rick Elkin and Officer Brian Cornett responded to the scene, arriving almost simultaneously.  Elkin and Cornett observed a crowd surrounding the fray.  Cornett observed Diener "struggling" underneath Woosley, who had Diener pinned face-down to the ground, and that Woosley had a "chokehold or headlock of some sort around [Diener's] neck." Cornett also observed that Diener's face was "flushed."  Elkin reported that Woosley and Diener were "struggling"  upon his arrival at the scene, that Diener was beneath Woosley, that Diener was in a "headlock" or "shoulder-lock," that his face was "blood-redish," and that he was "maybe being choked."

Cornett ordered Woosley to "get off" Diener, but Woosley did not do so.  Elkin twice warned Woosley to "break it up."  Cornett was concerned that Diener's safety was in jeopardy, specifically whether he could breath, so, when Woosley failed to comply with Elkin and Cornett's orders, Cornett drew his Taser and stunned Woosley.  Captain Elkin also had his hand on his Taser weapon and was maneuvering around the crowd when Cornett fired his Taser.

Cornett found the scene "chaotic" and describes "screaming and hollering" at the scene.  Elkin described the "commotion" at the scene.  Perhaps for this reason, Woosley claims that he never saw Cornett approaching and did not hear the commands made by Cornett

and Elkin, although he does not dispute that they were made. Nonetheless, he says that he was attempting to release Diener and rise to his knees when Officer Cornett stunned him with the Taser.

Following the use of the Taser, Woosley was compliant. Police interviewed Woosley, Diener, and a few witnesses. Diener and the two witnesses provided brief statements to the police. The officers charged Diener and Woosley with disorderly conduct and transported both individuals to jail. The Bourbon District Court ultimately dismissed the charges in each case, on September 26, 2006, and April 25, 2007, respectively.

Under 42 U.S.C. § 1983, Woosley avers violations of his constitutional rights by means of excessive force and false arrest and imprisonment. He also avers wrongs under § 1983 and state law against the City of Paris and former Chief of Police Michael Kendall for failure to train and supervise Defendant Cornett. Finally, Woosley avers state law claims against Cornett for assault and battery, false arrest and imprisonment, negligent or intentional infliction of emotional distress, and malicious prosecution. By virtue of the motion at bar, Defendants argue that summary judgment on all claims is appropriate. For the reasons stated below, Defendants' motion is well taken and shall be granted.

## II. APPLICABLE STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered. In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not *necessarily* preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that – viewing the facts in the light most favorable to the plaintiff – the plaintiff has failed to establish a violation of clearly established constitutional law. *Saucier v. Katz*, 533 U.S. 194 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1998).

-4-

III. DISCUSSION

    A.    QUALIFIED IMMUNITY AND PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

In order to state a valid claim under 42 U.S.C. § 1983, Plaintiff must show that Defendant Cornett (1) violated one or more of his constitutional or federal statutory rights while (2) acting under color of state law. *See Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006). If a government official, including a police officer, performs a discretionary function, as here, the qualified immunity doctrine may bar the lawsuit and fully shield the official from liability.[1] *See id.* at 536.

Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Humphrey v. Marbry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 847. The task before the Court may, thus, be understood as follows:

In resolving questions of qualified immunity,

---

    [1]    There appears to be no dispute, on the facts presented in this matter, Defendant Cornett's decisions to intervene at the scene of Woosley's fight with Diener and to arrest Woosley were within the scope of Cornett's discretionary authority. *See Howard ex rel. Estate of Howard v. Bayes*, 378 F.Supp.2d 753, 757 (E.D. Ky. 2005).

–5–

> courts are required to resolve a "threshold
> question:  Taken in the light most favorable
> to the party asserting the injury, do the
> facts alleged show the officer's conduct
> violated a constitutional right? This must be
> the initial inquiry." *Saucier* . . . , 533 U.S.
> [at] 201 . . . .  If, and only if, the court
> finds a violation of a constitutional right,
> "the next, sequential step is to ask whether
> the right was clearly established ... in light
> of the specific context of the case."  [*Id.*]

*Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007).  The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court.  *Heflin v. Stewart County, Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992).

In order to evaluate the threshold issue of whether Defendant Cornett is due qualified immunity under federal law, the Court must first determine whether Cornett violated a constitutional or federal statutory right belonging to Plaintiff Woosley and, if a violation occurred, whether he transgressed a "clearly established right." *Saucier*, 533 U.S. at 201.  As explained below, on the facts presented to the Court in this matter, Plaintiff's causes of action for wrongful arrest and excessive force cannot survive as Plaintiff has failed to show a violation of a constitutionally protected right for the reasons stated below. These claims shall be dismissed as Officer Cornett is due qualified immunity.

### 1.   PLAINTIFF'S FALSE ARREST CLAIM FAILS

To demonstrate false arrest under § 1983, Woosley must prove that the police lacked probable cause to arrest him.  *Fridley v.*

*Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).  Probable cause exists if a reasonably prudent person would believe that there is a "fair probability" that a suspect has committed, is committing, or intends to commit a crime.  *See id*.  A police officer has qualified immunity from suit if the officer "arguably had probable cause" to arrest.  *See Dier v. City of Prestonsburg*, 480 F. Supp. 2d 929, 936 (E.D. Ky. 2007) (citing *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993)).

Defendant Cornett arrested Woosley for disorderly conduct, which was defined under Kentucky statute at the time of the conduct in question as follows:

> A person is guilty of disorderly conduct when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>
> (a) Engages in fighting or in violent, tumultuous, or threatening behavior;
>
> (b) Makes unreasonable noise;
>
> (c) Refuses to obey an official order to disperse issued to maintain public safety in dangers proximity to a fire, hazard, or other emergency; or
>
> (d) Creates a hazard or physically offensive condition by any act that serves no legitimate purpose.

KRS 525.060(1) (2005).

There is no dispute of any material fact.  Captain Elkin and Officer Cornett received a report of a civil disturbance, responded to the scene, and immediately observed a crowd standing outside,

surrounding the fray, located in the "front-yard" of an apartment complex. Woosley was laying across Diener and had pinned the much smaller man face-down in the grass. Woosley had his arms wrapped around Diener's arms and neck. No doubt, the officers reasonably believed they were encountering a fight and certainly were witness to violent or threatening behavior on the part of Woosley.[2] The situation was, again without a doubt, tumultuous.[3]

Woosley argues that, nonetheless, the officers lacked probable cause to arrest him because the scene was unfolding on the lawn in front of his home, which he characterizes as private property. For the purposes of KRS 525.060, however a public place includes "other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence." KRS 525.010(3). Woosley's home, by his own admission, was not a single family dwelling, and the lawn, an outside common area, qualifies as a public place under Kentucky law.

_____

[2]   Plaintiff argues that the officers should have known from the position in which Plaintiff was restraining Diener that Plaintiff had been attacked by Diener and that Plaintiff was attempting to defuse a volatile situation and was restraining Diener from moving and causing further commotion. Thus, he argues that he did not cause or wantonly create a risk of causing such fighting to occur. The Court need not draw such an unreasonable inference from the undisputed facts and, indeed, declines to do so. *See Jones v. Potter*, 488 F.3d 397, 407 (6th Cir. 2007).

[3]   In other words, "marked by violent or overwhelming turbulence or upheaval." Merriam-Webster On-Line Dictionary, <http://www.merriam-webster.com/dictionary/tumultuous> (last checked December 2, 2008).

Further, even if the Court did not conclude that the lawn in front of Plaintiff's apartment complex was a public place for the purposes of KRS 525.060, where a dispute on an otherwise private front lawn creates a risk of public alarm or produces its offensive or proscribed consequences in a public place, the offense of disorderly conduct may lie. *See Collins v. Commonwealth*, No. 2002-CA-001991-MR, 2004 WL 315035, at *1 (Ky. Ct. App. Feb. 20, 2004). Here, a prudent officer would be entitled to believe that the scene unfolding on Plaintiff's lawn was causing public alarm considering the crowd that had gathered to observe the altercation.  Officer Cornett was certainly so entitled on the facts before this Court.

In either event, Cornett reasonably believed that Woosley had committed, was committing, or intended to commit the crime of disorderly conduct.  Accordingly, as Plaintiff cannot demonstrate a violation of a constitutional or federal statutory right on the undisputed facts, there is no violation of 42 U.S.C. § 1983 on grounds of false arrest, and Cornett is due qualified immunity. This claim shall be dismissed.

### 2.   EXCESSIVE FORCE

As summed up in an opinion of the Sixth Circuit Court of Appeals, decided and filed on December 1, 2008:

> In determining whether a constitutional violation based on excessive force has occurred, [this Court applies] "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed

> from the perspective of a reasonable officer
> on the scene and not with 20/20 hindsight."
> *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir.
> 2007) (citing *Graham v. Connor*, 490 U.S. 386,
> 395–96 (1989)). "The calculus of
> reasonableness must embody allowance for the
> fact that police officers are often forced to
> make split-second judgments—in circumstances
> that are tense, uncertain, and rapidly
> evolving—about the amount of force that is
> necessary in a particular situation." *Graham*,
> 490 U.S. at 396–97. "Relevant considerations
> include 'the severity of the crime at issue,
> whether the suspect poses an immediate threat
> to the safety of the officers or others, and
> whether he is actively resisting arrest or
> attempting to evade arrest by flight.'" *Fox*,
> 489 F.3d at 236 (quoting *Graham*, 490 U.S. at
> 396).

*Dunn v. Matatall*, No. 07-10434, slip op. at 5 (6th Cir. Dec. 1, 2008). If the level of force was appropriate, the use of force to protect another person's safety does not violate constitutional or federal statutory rights. *See, e.g.*, *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002).

Considering the *Graham* factors, from Cornett's perspective on the scene and not using hindsight, this Court concludes that the facts show that Cornett acted reasonably in attempting to neutralize a perceived threat to Diener's life by stunning Woosley with his Taser under the following circumstances. Plaintiff Woosley, weighing in at 250 pounds, had Diener (120 pounds) pinned to the ground with his body, and Woosley's arms were wrapped around Diener's arms and neck in a "chokehold." Diener's face was "flushed." "[J]udged from the perspective of a reasonable officer

-10-

on the scene," some action was no doubt necessary to preserve Diener's life and well-being as it was placed in danger by Woosley's actions. *Graham*, 490 U.S. at 396.

Having been ordered to "get off" Diener and to "break it up" by Cornett, Woosley persisted in his behavior. Even accepting as true that Plaintiff did not hear these orders from Cornett, there is no dispute that Woosley did not loosen his hold on Diener at that time. Only at the point when Cornett drew his Taser and stunned the plaintiff does Woosley claim that he had decided to release Diener and rise to his knees. Accepting that as true, there is still no evidence that Woosley's decision to release Diener and rise to his knees had been communicated in any way to anyone, least of all by his actions.

These facts are all clearly relevant to a determination of what force was necessary under the circumstances and whether the level of force used was reasonable. Considering Diener's distress and the fact that verbal warnings to cease and desist were given to Woosely to no avail, it was necessary for Cornett to use the force necessary to stop the wrestling match on the apartment lawn. More to the point, it was necessary for Cornett to use the force necessary to stop Woosley, a very large man by all accounts, from pinning Diener to the ground and, by all appearances, endangering Diener's life. In this sense, Officer Cornett did not gratuitously stun Woosley because Woosley was actively engaged in causing harm

-11-

to Diener when Cornett stunned him.  Rather, it was necessary for
Cornett to deploy his Taser in order to stop the wrestling match on
the apartment lawn.

In answering the next question, whether the force used was
objectively reasonable, the Court first considers that the
underlying actions for which Cornett sought to take Plaintiff into
custody were violent, arising out of the melee with Diener.  Diener
was struggling under Woosley's mass and his "choke-hold," and
verbal warnings had failed to stop Woosley's attack on Diener.  No
constitutional standard required Officer Cornett to endanger his
own safety and that of others by physically joining the fray.  *See*
*Monday v. Oullette*, 118 F.3d 1099, 1004-05 (6th Cir. 1997)
(officer's decision to use pepper spray "rather than risk injury
and further delay through physical confrontation" did not
constitute excessive force).  Nor has Plaintiff produced any
relevant precedent that clearly establishes a prohibition on the
use of a Taser as a means of subduing a suspect.  Rather, in this
Circuit, "[u]nder *Russo,* the use of a taser is permissible when
resort to even greater force may be necessary" and may be avoided
by use of the stun gun.  *Caldwell v. Moore*, 968 F.2d 595, 600 (6th
Cir. 1992) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1045
(6th Cir. 1992)).

Could a reasonable jury conclude that the decision to stun
Woosley with a Taser was an unreasonable use of force on these

-12-

facts?  The Court thinks not.  Officer Cornett was faced with a situation where Diener's life was in apparent danger.  The use of a stun gun was necessary when it is considered that Cornett, thus, avoided the use of even greater force to prevent injury or loss of life in responding to the incident at bar.  Taken as true, the Court finds that the facts available could not be understood by a reasonable jury to describe a wrong of constitutional proportions.

Simply stated, there is no evidence that Cornett gratuitously stunned Woosley and, more to the point, the use of the Taser was both necessary and objectively reasonable to stop Woosley's assault on Diener.  As Plaintiff cannot demonstrate a violation of a constitutional or federal statutory right on the undisputed facts, there is no violation of 42 U.S.C. § 1983 on grounds of excessive force, and this claim shall be dismissed.

### B.   QUALIFIED IMMUNITY AND STATE LAW CLAIMS

Under Kentucky law, public employees, including police officers, enjoy qualified official immunity from tort liability for "good faith judgment calls made in a legally uncertain environment." *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Public employees receive qualified official immunity for (1) discretionary acts (2) performed in good faith and (3) within the employee's scope of authority. *Id*.  In the instant matter, Cornett's actions were clearly discretionary acts within the scope of his authority as a police officer.  Having established the first

and third elements, the burden shifts to the plaintiff to show that the "discretionary act was not performed in good faith." *Id.* at 523. Bad faith exists if either a public employee violated a constitutional, statutory, or other clearly established right of which a reasonable person would have known or if the public employee "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.*

In this instance, there are not facts to support a finding that Cornett acted "maliciously" or with a "corrupt motive" – as explained above, this was not a gratuitous action on the part of Officer Cornett. Rather, he was reacting to what was, by all accounts, an assault on Diener. Thus, the Court is left to consider whether Cornett violated a constitutional, statutory, or other clearly established right which belonged to Woosley. For both the reasons stated above, in the analysis of Plaintiff's federal claims, and the reasons stated below, the Court finds that the evidence does not support a finding that Cornett violated any such right, and Cornett is due qualified official immunity under state law.

### 1. Assault/Battery

Simply stated, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001) (*citing Brewer v. Hillard,* 15 S.W.3d 1, 8 (Ky.

-14-

Ct. App. 1999)).  However, a police officer is privileged, under
certain circumstances, to use force in effecting an arrest.  This
privilege has been codified as follows:

> (1)  The use of physical force by a defendant upon another
> person is justifiable when the defendant, acting under
> official authority, is making or assisting in making an
> arrest, and he:
>
>> (a)  Believes that such force is necessary to effect the
>> arrest;
>>
>> (b)  Makes known the purpose of the arrest or believes
>> that it is otherwise known or cannot reasonably be
>> made known to the person to be arrested; and
>>
>> (c)  Believes the arrest to be lawful.

KRS § 503.090.

Police officers generally have a privilege to use reasonably
necessary force to preserve order.  *Lawson v. Burnett*, 471 S.W.2d
726, 728-29 (Ky. 1971) (officer responsible for damages only where
he uses excessive force).  As the Court has determined that the
force used to bring an end to the fight between Woosley and Diener
was both necessary and reasonable as outlined above, the Court also
concludes that Cornett was privileged to use that same force to
effect the arrest of Woosley.  *See also Blair v. Commonwealth*, No.
2005-CA002017-MR, 2007 WL 1720133, *6 (Ky. Ct. App. June 15, 2007)
("Although being struck by a taser is an unpleasant experience, the
use thereof is not excessive *per se*.").  Cornett reasonably
attempted to make the purpose of the arrest known to Woosley,
although Woosley apparently did not hear him, and he clearly

believed the arrest to be lawful, all things considered.  Summary judgment on this issue shall be granted.

### 2.  False Arrest/Imprisonment

A claim of false imprisonment will lie where "(1) Defendant's act by force or threats of force against any other person or property (2) which with intent to cause plaintiff to be confined in area certain." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 278 (Ky. Ct. App. 1981).  "An officer making an arrest without a warrant in the reasonable and good faith belief that a misdemeanor is being committed in his presence is not liable for false imprisonment, even though it develops that the arrestee is not guilty of any offense." *See McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 842 (Ky. 1960).  As previously established, Cornett had a "reasonable and good faith belief" that Woosley was committing the crime of disorderly conduct under KRS 525.060 based on Woosley's conduct as observed by Cornett.  It is irrelevant that the Bourbon District Court subsequently dismissed the charge. Plaintiff has failed to establish that Cornett violated any clearly established right which belonged to him on these grounds.  Cornett is due qualified official immunity, and, in any event, Woosley's claim fails and will be dismissed.

### 3.  Negligent and/or Intentional Infliction of Emotional Distress

Woosley's claim for infliction of emotional distress is

duplicative of his other claims and is, thus, improper. *Rigazio v. Archidiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993). As Plaintiff's theory involves "one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed," the "tort of outrage will not lie." *Id.* at 299. Again, Plaintiff has failed to establish that Cornett violated any clearly established right which belonged to him on these grounds. Cornett is due qualified official immunity, and, in any event, Woosley's claim fails and will be dismissed.

### 4. Malicious Prosecution

Malicious prosecution requires, among its other elements, a showing that a defendant acted maliciously in the institution of the proceeding and the want or lack of probable cause for the proceeding. *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). Malice is more than committing a wrongful act without valid justification; it requires an unlawful motive or purpose. *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40 (Ky. 1931). In the instant matter, there are no facts to support a conclusion that Cornett acted with malice or that he lacked probable cause for the proceeding for the reasons set forth previously in this opinion. Plaintiff has again failed to establish that Cornett violated any clearly established right which belonged to him on these grounds. Cornett is due qualified official immunity, and, in any event, Woosley's claim fails and will be dismissed.

**C.   CLAIMS AGAINST THE CITY OF PARIS AND POLICE CHIEF MICHAEL KENDALL**

Plaintiff alleges that Defendants City of Paris and Chief Kendall "negligently failed to properly train, supervise, regulate, or discipline the Defendant, Officer Brian Cornett, in the exercise of his police functions, specifically the use of force."  While it is unclear from his Complaint whether he pursues his claim based on state or federal law, based on his response to Defendants' Motion for Summary Judgment, the Court understands that Plaintiff pursues these claims against the City of Paris under both 42 U.S.C. § 1983 and state law.  With regard to Defendant Kendall, Plaintiff pursues his claims only under 42 U.S.C. § 1983.   In either event, his claims are predicated on a finding that Officer Cornett used his Taser in violation of the law, which, as explained above, he did not.   Accordingly, these claims fail, as well, and shall be dismissed.

**IV.   CONCLUSION**

For all of the reasons stated above**,** Defendants' Motion for Summary Judgment shall be granted.

Accordingly, **IT IS ORDERED** that Defendants' Motion for Summary Judgment [Record No. 36] shall be, and the same hereby is, **GRANTED.**

This the 2nd day of December, 2008.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge

-18-